IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DELAINE MacDONALD *et al.*,       *

   Plaintiffs                              *

v.                                              *

                                                                                CIVIL NO. JKB-17-0754

UNITED STATES OF AMERICA,      *

   Defendant                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

### *I. Background*

This case is brought by Plaintiffs Delaine MacDonald and Neal Kringel against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, for alleged medical malpractice by a surgeon, U.S. Army Lieutenant Colonel Leon Nesti, M.D., when he performed an operation on MacDonald to repair her carpal tunnel syndrome. (Compl., ECF No. 1.) The operation was performed at the Kimbrough Ambulatory Care Center at Fort George G. Meade in Maryland. (*Id.* ¶¶ 10-11.) MacDonald alleges, and the Government does not dispute, that her median nerve was partially lacerated during the course of the surgery. (*Id.* ¶ 12; Def.'s Ans. ¶ 13, ECF No. 10.) The nerve damage was recognized and repaired intraoperatively. (Compl. ¶ 12.) MacDonald alleges she suffers permanent damage from the incident. (*Id.* ¶ 16.)

Now pending before the Court is the Government's motion for summary judgment. (ECF No. 23.) The motion has been briefed (ECF Nos. 26, 29), and no hearing is required, Local Rule 105.6 (D. Md. 2016). The motion will be denied.

*II. Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

*III. Analysis*

The Government contends that the Plaintiffs' expert's opinions on the standard of care and the breach of that standard are insufficient as a matter of law and, therefore, that the Government is entitled to summary judgment in its favor on the question of whether Dr. Nesti was negligent when MacDonald's median nerve was damaged during the surgery. (Def.'s Mot.

Summ. J. Supp. Mem. 2, ECF No. 23-1.) This contention is narrowly focused on particular parts of the testimony of Plaintiffs' expert, John Fowler, M.D., and fails to take into account Dr. Fowler's full opinion. Consequently, the prevailing Maryland case law does not support the Government's argument.

Because of their complexity, medical malpractice cases must ordinarily rely upon expert testimony to establish breach of the standard of care and causation. *Tucker v. Univ. Specialty Hosp.*, 887 A.2d 74, 78 (Md. Ct. Spec. App. 2005). The Government contends Dr. Fowler's opinion on the standard of care is fatally flawed because, the Government argues, it amounts to a strict liability standard. But this argument does not survive a careful reading of Dr. Fowler's opinion. Further, the Government argues Dr. Fowler fails to explain how the standard of care was breached by Dr. Nesti.

Dr. Fowler's qualifications as an expert on carpal tunnel release surgery are unquestioned by the Government and are well established in the record. He states in his opinion that he has "extensive experience performing both endoscopic and open carpal tunnel release surgery." (Fowler Op. 1, Def.'s Mot. Summ. J. Ex. B, ECF No. 23-3.) He also states, "I am familiar with the techniques utilized by Dr. Leon Nesti during the carpal tunnel release surgery he performed on Delaine MacDonald on December 17, 2013." (*Id.*) With regard to the standard of care, Dr. Fowler stated,

> The standard of care for a hand surgeon performing carpal tunnel release, regardless of whether the surgery is performed endoscopically or in an open fashion, is to properly identify the anatomical structures of the wrist, including the median nerve. The standard of care requires that the surgeon take precautionary measures to protect the median nerve from injury during surgery. Protection of the median nerve requires proper identification of the median nerve and techniques to avoid nerve laceration while performing the surgery. In this specific case, protection of [the] median nerve required incision of the distal forearm fascia (to allow access to the carpal tunnel) without lacerating the median nerve in the process.

(*Id.* 2.)

As for his opinion on whether Dr. Nesti breached the standard of care, Dr. Fowler stated,

> It is my opinion that Dr. Nesti breached the standard of care by not properly identifying and protecting the median nerve during the December 17th surgery, thereby lacerating it with the surgical knife. Lacerating the nerve that the surgeon is intending to decompress breaches the standard of care. Once the skin incision is made, it is imperative to dissect the subcutaneous fat off the distal forearm antebrachial fascia and make a "window" in the fascia to allow insertion of the endoscopic equipment into the carpal tunnel. Dr. Nesti made an "L-shaped" window and he lacerated the median nerve while making the horizontal part of the "L". This could have been avoided by making two longitudinal incisions in the fascia, lifting up the fascia, and then carefully dividing the more proximal portion to make a "U-shaped" flap. Dr. Nesti breached the standard of care by not properly protecting the median nerve while making this flap and then lacerating the median nerve. Understanding the anatomy and depth of dissection is an essential part of carpal tunnel surgery and part of the standard of care. Dr. Nesti either mistook the nerve for part of the distal forearm fascia and lacerated it directly or he cut too deeply while making the fascial flap and lacerated the nerve. This breaches the standard of care.

(*Id.* 2-3.)

According to the Government, Dr. Fowler "relies exclusively on the mere fact of an unsuccessful result of Ms. MacDonald's surgery in reaching the opinion that Dr. Nesti breached the standard of care. The mere fact of injury, without more, however, is insufficient to sustain a medical negligence claim." (Def.'s Mot. Summ. J. Supp. Mem. 4.) To support that contention, the Government cites *Nolan v. Dillon*, 276 A.2d 36, 46 (Md. 1971), for the proposition, "It is well established by the case law in [Maryland] that the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence. Nor does the doctrine of *res ipsa loquitur* apply." Those statements may be accurate, as far as they go. But what was expressed in *Nolan* has been refined and expounded upon in later opinions.

The case of *Meda v. Brown*, 569 A.2d 202 (Md. 1990), is instructive. There the Maryland Court of Appeals drew a distinction between a layman's inference of negligence and

4

an expert's inference of negligence. In the former situation, the jury of laypersons would be simply presented with the fact of injury and asked to draw an inference of negligence. Instead, "[t]he plaintiff's experts, armed with their fund of knowledge, drew certain inferences from the circumstances." *Id.* at 206-07. Thus, the trial court did not commit error by admitting the doctors' opinions based on a combination of direct and circumstantial evidence. *Id.* at 207. This distinction was amplified in *Kennelly v. Burgess*, 654 A.2d 1335 (Md. 1995), which approved an expert witness's reliance upon an unsuccessful result as a basis for his opinion that there was negligence. Thus, "although an unsuccessful result does not create a presumption of negligence, it still may be considered as some evidence of negligence and . . . an expert witness may consider it in formulating his or her opinion that there was negligence." *Id.* at 1341. Maryland cases make it very clear that reliance by an expert upon the fact of injury is not an application of the doctrine of *res ipsa loquitur*. *Dover Elevator Co. v. Swann*, 638 A.2d 762, 773 (Md. 1994); *Meda*, 569 A.2d at 205. As was stated in *Dover*,

> If expert testimony is used to raise an inference that the accident could not happen had there been no negligence, then it is the expert witness, not an application of the traditional *res ipsa loquitur* doctrine, that raises the inference. The expert testimony offered in these "quasi *res ipsa loquitur* cases" differs somewhat from more traditional expert testimony because, instead of testifying that a *particular act* or omission constituted a failure to exercise due care, the expert testifies to the *probability* that the injury was caused by the failure to exercise due care. The expert also testifies that the accident ordinarily would not occur unless there was a failure to exercise the appropriate degree of care. Like a *res ipsa loquitur* case, such expert testimony is offered to explain why there is a probability of negligence, which may be inferred from the circumstances of the accident, even though the expert is unable to pinpoint any particular negligent conduct. Although such testimony does not isolate the specific negligent conduct, it does allow the jury to find negligence as the result of the expert's opinion rather than by circumstantial evidence and common knowledge as in the usual *res ipsa loquitur* case.

638 A.2d at 773. Thus, *Dover* aligned with *Meda*, which had earlier rejected the defendants' contention that the testimony of the plaintiff's experts was "mere speculation or conjecture"

because those experts "could not identify with particularity the specific act of negligence and precise mechanism of injury." 569 A.2d at 206.

As in *Meda* and *Dover*, the Government here faults Dr. Fowler for failing to explain how Dr. Nesti breached the standard of care. But such precision is not necessary for a viable claim of medical malpractice. Dr. Fowler's opinion meets the governing standards in Maryland. It is based upon his experience in performing the same type of surgery and his understanding of how the median nerve can be injured or protected from injury. Similar to *Tucker*, the Government "disputes the inferences and conclusions drawn by [the plaintiff's expert]. But when a court considers a motion for summary judgment, all reasonable or permissible inferences must be resolved in favor of the non-moving party." 887 A.2d at 82. *See also Scott v. Harris*, 550 U.S. at 378 (applying same standard). A genuine dispute of material fact exists as to whether Dr. Nesti was negligent when he lacerated MacDonald's median nerve. Therefore, the Government is not entitled to summary judgment.

## *IV. Conclusion*

For the foregoing reasons, the Court DENIES the motion for summary judgment (ECF No. 23). A scheduling conference call will be held on October 19, 2018, at 9:45 a.m. Plaintiffs' counsel is to arrange for and initiate the conference call to chambers. The purpose of the call is to set a trial schedule. Prior to the call, counsel should consult with their respective clients and be able to advise the Court whether they consent to reference of this case for the conduct of all further proceedings by a magistrate judge. As well, counsel should be prepared to advise the Court whether the parties desire to reconvene for a settlement conference with Magistrate Judge Gina L. Simms, who conducted the earlier settlement conference.

DATED this 5th day of October, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge